NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| TRUCKING EMPLOYEES OF NORTH JERSEY WELFARE FUND, INC. - PENSION FUND,<br><br>  Plaintiff,<br><br>  v.<br><br>CALIBER AUTO TRANSFER, INC,<br><br>  Defendant. | Civil Action No. 08-02782 (JAG)<br><br>**OPINION** |

**GREENAWAY, JR., U.S.D.J.**

This matter comes before this Court on the motion for entry of default judgment (Docket Entry No. 11) by plaintiff, Trucking Employees of North Jersey Welfare Fund Inc. – Pension Fund ("Plaintiff" or the "Pension Fund"). Plaintiff seeks entry of default judgment against defendant, Caliber Auto Transfer, Inc. ("Defendant" or "Caliber"), pursuant to FED. R. CIV. P. 55(b). Plaintiff requests monetary damages stemming from Defendant's complete withdrawal from the Pension Fund. For the reasons set forth below, Plaintiff's motion will be granted and Defendant will be ordered to pay damages to Plaintiff.

**I.  FACTS**

The Pension Fund is "a multi-employer pension plan," as defined by the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(2). (Comp. ¶ 3.) The

1

Pension Fund is administered pursuant to the provisions of a trust agreement and ERISA. (Id.) Meanwhile, Defendant and a third party, Teamsters Local Union 560 ("Local 560"), were signatories to a collective bargaining agreement. (Id. at ¶ 5.) This collective bargaining agreement required Defendant to make pension contributions to the Pension Fund on a monthly basis. (Id. at ¶ 6.)

On or about July 31, 2007, Defendant's obligation to make contributions to the Pension Fund ended after "permanently ceas[ing] all covered operations under the Plan." (Id. at ¶ 7.) This resulted in Defendant's complete withdrawal from the Pension Fund, pursuant to 29 U.S.C. § 1383(a).[1] (Id. at ¶¶ 8-10.)

"If an employer withdraws from a multiemployer pension plan," the employer is liable to the plan, pursuant to 29 U.S.C. § 1381. According to 29 U.S.C. § 1382, the Pension Fund, as the sponsor of the fund, had an obligation to (1) determine Defendant's withdrawal liability; (2) notify Defendant of the amount of withdrawal liability; and (3) collect the amount of withdrawal liability from the employer, Defendant. The amount of withdrawal liability is determined, pursuant to 29 U.S.C. § 1391.

In accordance with 29 U.S.C. § 1382, the Pension Fund notified Defendant of its determination that Defendant had a complete withdrawal from the Pension Fund by a letter dated August 30, 2007. (Compl. ¶ 10.) The same Letter also notified Defendant of the estimated value of its withdrawal liability, $2,338,738.00. (Id.) In addition, the Letter provided a "payment schedule of $28,217.65 per month for 110 months commencing on October 1, 2007 and with a

---

[1] "[A] complete withdrawal from a multiemployer plan occurs when an employer – (1) ceases to have an obligation to contribute under the plan or (2) permanently ceases all covered operations under the plan." 29 U.S.C. § 1383(a).

final payment of $2,621.44." (Id.) Moreover, the Pension Fund informed Defendant of its right to review the withdrawal liability assessment and "challenge the withdrawal liability assessment or amount through arbitration." (Id.) The Pension Fund also advised that, according to 29 U.S.C. § 1399(b)(2), if Defendant chose to request a review of the withdrawal liability assessment or decided to arbitrate the matter, Defendant would have to continue to make withdrawal liability payments during any review or arbitration of "the Pension Fund's withdrawal liability assessment or calculation." [2] (Id.)

Defendant failed to make the first withdrawal liability payment due on October 1, 2007 and all payments due thereafter. (Compl. ¶ 11.) As a result, on February 5, 2008, the Pension Fund informed Defendant of its failure to remit its October 1, 2007 withdrawal liability payment and payment due thereafter. (Id. at ¶ 12.) Within this same correspondence, the Pension Fund also notified Defendant that if it did not make its "past due monthly withdrawal liability payments within sixty (60) days . . . the entire amount of its withdrawal liability would be due." (Id.) In the letter dated April 7, 2008, the Pension Fund finally informed Defendant of its final withdrawal liability assessment of $1,997,567.00, its calculation of monthly payments of $28,217.65 for 88 months, and a final payment of $22,350.54. (Id. at ¶ 15.)

The Pension Fund now alleges in its Complaint that Defendant is in default regarding its monthly withdrawal liability payments, pursuant to 29 U.S.C. § 1399(c)(5). (Id. at ¶ 14.) The Pension Fund further contends that Defendant did not request "a review of the withdrawal liability assessment" nor "arbitration to challenge the Pension Fund's withdrawal liability assessment," within the statutory time limit provided. (Id. at ¶¶ 16-17.)

---

[2] There is no such requirement contained within 29 U.S.C. § 1399(b)(2).

Pension Fund requests that this Court enter default judgment against Defendant. (Compl. ¶ 17.) Specifically, the Pension Fund requests that Defendant pay its withdrawal liability, the sum of $1,997,560.00, pursuant to 29 U.S.C. § 1399(c)(5) and/or 29 U.S.C. § 1401. (Id.) Additionally, the Pension Fund requests that this Court order Defendant "to pay accrued interest on the delinquent withdrawal liability payments;" liquidated damages of either "twenty percent of the withdrawal liability amount or a double interest award, whichever is greater;" and the costs of suit and reasonable attorney's fees. (Id.)

## II. LEGAL STANDARD

A district court can enter a default judgment, pursuant to FED. R. CIV. P. 55(b)(2), which states:

> In all other cases, the party must apply for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 3 days before the hearing. The court may conduct hearings or make referrals–preserving any federal statutory right to a jury trial–when, to enter or effectuate judgment, it needs to:
> (A) conduct an accounting;
> (B) determine the amount of damages;
> (C) establish the truth of any allegation by evidence; or
> (D) investigate any other matter.

FED. R. CIV. P. 55(b)(2). Further, discretion to enter default judgment is left primarily to the trial court. Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir. 1984).

"Default establishes the defaulting party's liability for the well-pleaded allegations of the complaint." United States v. Gant, 268 F. Supp. 2d 29, 32 (D.D.C. 2003) (citing Brock v.

Unique Racquetball & Health Clubs, Inc., 786 F.2d 61, 65 (2d Cir. 1986)). Default does not establish liability for the amount of damages claimed by the plaintiff. Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974) ("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation."). "The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999).

The district court has considerable latitude in determining the amount of damages. Jones v. Winnepesaukee Realty, 990 F.2d 1, 4 (1st Cir. 1993). In determining the amount, the district court may conduct a hearing. FED. R. CIV. P. 55(b)(2). The court is not required to do so, however, "as long as it ensure[s] that there [is] a basis for the damages specified in the default judgment." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997). "It is familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly." Pope v. United States, 323 U.S. 1, 65 (1944).

## III. JURISDICTION

Before a district court can enter default judgment against a party that has not filed responsive pleadings, the court "has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." Williams v. Life Sav. & Loan, 802 F.2d 1200, 1203 (10th Cir. 1986).

In the instant case, this Court has subject matter jurisdiction, pursuant to 28 U.S.C. § 1331. This action involves a federal question, since the dispute requires interpretation of 29 U.S.C. §§ 1381- 1382, 29 U.S.C. § 1391, and 29 U.S.C. § 1399. Furthermore, this Court has personal jurisdiction over Defendant, since Plaintiff alleges that "Defendant had its principal place of business at 802 Doremas Avenue, Newark, Essex County, New Jersey."[3]  (Compl. ¶ 4.)

### IV.  ANALYSIS

Defendant has failed to appear, or otherwise plead, in response to the Complaint, which was filed on June 3, 2008, (Compl. 6), and served on Defendant on January 5, 2009. (Summons Returned Executed by Pension Fund; Docket Entry No. 6.)  Plaintiff appropriately filed its motion for entry of default judgment (Docket Entry No. 11), after the clerk entered default against Defendant on February 10, 2009 (Docket Entry No. 10).  This Court finds that default judgment is appropriate under FED. R. CIV. P. 55(b)(2).

---

[3] "A consequence of the entry of a default judgment is that 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."  Comdyne I, Inc. v. Corbin, 908 F.2d 1142 (3d Cir. 1990) (citing C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure, § 2688 at 444 (2d ed. 1983)).  In the Complaint, Plaintiff states that Defendant had its principal place of business in Newark, New Jersey.  However, the Summons was served on Defendant's agent at One South Street, Suite 1910, Baltimore, Maryland.  Attached to the Summons was a notice of "Resolution to change principal office or resident agent" from the Secretary of State for the State of Maryland, indicating the name and changed address of Defendant's registered agent.  (Summons Returned Executed by Pension Fund; Docket Entry No. 6.)  Although it appears that Defendant relocated from New Jersey, at some time subsequent to the cessation of its business on July 31, 2007, this Court still has personal jurisdiction over Defendant since Defendant's activity at its terminal in Newark gave a rise to the claim in this suit.  "[I]f the defendant's activity in the forum gave rise to the claim, so that specific jurisdiction would attach, that jurisdiction continues to exist when the action is commenced even though the defendant may have ceased all activity in that district."  14 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure, § 3811.1; see also Houston Fearless Corp. v. Teter, 318 F.2d 822, 827 (10th Cir. 1963).

## V.  **DAMAGES**

Plaintiff requests $1,997,560.00 as the sum of the withdrawal liability owed, pursuant to 29 U.S.C. § 1399(c)(5) and/or 29 U.S.C. § 1401.  (Compl. ¶ 17.)

In addition, Plaintiff specifically requests that this Court order Defendant "to pay accrued interest on the delinquent withdrawal liability payments," and liquidated damages of either "twenty percent of the withdrawal liability amount or a double interest award, whichever is greater," along with reasonable attorney's fees and court costs.  (Id.)

This latter portion of damages is requested, pursuant to 29 U.S.C. § 1132(g)(2), which states that:

> [T]he court shall award the plan (A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of – (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of twenty percent of the amount determined by the court under subparagraph (A), (D) reasonable attorney's fees and costs of the action to be paid by the defendant, and (E) such other legal or equitable relief as the court deems appropriate.  For the purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

29 U.S.C. §§ 1132(g)(2), 1451(b).

The Pension Fund's Trust Agreement stipulates that interest on the unpaid contributions is to be collected at a ten percent interest rate per annum.  (Heim Aff. ¶ 19.)  The ten percent interest rate is to be collected from October 1, 2007 through May 4, 2009.  (Id.)  This amounts to $323,737.89.  Liquidated damages calculated at a twenty percent interest rate totals $399,512.00.  (Id. at ¶ 18.)  The total amount owed by Defendant is $2,720,809.89 (for the withdrawal liability ($1,997,560.00), interest on the withdrawal liability ($323,737.89), and liquidated damages on the withdrawal liability ($399,512.00)).  (Id. ¶ 20.)  Attorney's fees and court costs total

$6,379.95 (attorney's fees of $5,915.00, and court costs of $464.95).  (Grossman Aff. ¶ 2.)

Therefore, the total amount of damages is $2,727,189.84.

## VI.  CONCLUSION

For the reasons set forth above, this Court finds that default judgment is appropriate, under FED. R. CIV. P. 55(b)(2), on all counts of the Complaint.  Plaintiff's demand for judgment will be granted.

Date: October 26, 2009

       S/Joseph A. Greenaway, Jr.
       JOSEPH A. GREENAWAY, JR., U.S.D.J.